Kevin J. Stoops (CA SBN 332200)
SOMMERS SCHWARTZ, P.C.
1801 Century Park East, Suite 860
Los Angeles, CA 90067
(248) 355-0300
kstoops@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective and Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

RICHARD MARSHALL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

OLD REPUBLIC HOME PROTECTION COMPANY, INC,

Defendant.

Case No.:

**Class Action Complaint for:**

1) **Violations of the Fair Labor Standards Act-Failure to Pay Overtime**
2) **Violations of the North Carolina Wage Act**
3) **Breach of Contract**
4) **Unjust Enrichment**

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Richard Marshall, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through his attorneys, hereby brings this Collective and Class Action Complaint against Old Republic Home Protection Company, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising out of Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., The North Carolina Wage and Hour Act, N.C.Gen. Stat. §§ 95-25.1, *et seq.* ("North Carolina Wage Act"), and common law.

2. Plaintiff and the putative collective members consist of current and former authorization agents, customer service agents, or similar positions ("Agents"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing

to compensate its Agents for all pre- and mid- shift off-the-clock work.

3. Regardless of the specific job title, all Agents: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing customer support.

4. Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers and logging into numerous software programs. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. An Agents' failure to be "phone ready" when the scheduled shift began would result in disciplinary action.

6. Defendant also required its Agents to return early from their designated lunch periods to ensure they were "phone ready" and able to work at the exact time their meal break ended. The Agents did not receive compensation for this work.

7. In addition, through its "Quality Assurance" policies and monitoring, Defendant forced Agents to frequently work off-the-clock to complete customer calls and avoid discipline.

8. The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only forty (40) hours per week, worked over forty (40) hours per week without the required overtime premium for all time worked over forty (40) hours.

9. Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

10. The U.S. Department of Labor recognizes that call center jobs, similar positions to those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal

activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited March 3, 2026).

11. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *See id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

12. Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

13. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly authorization agents, customer service agents, or similar positions, who work or have worked for Defendant at any time during the past three years.***

14. Defendant is liable for its failure to pay its Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

15. Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

17. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18. Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 20 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any

employer … in any Federal or State court of competent jurisdiction."

19. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Agents, engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

20. The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of California and maintains a principal place of business in the state of California.

21. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District, and maintains a principal place of business in this District.

22. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

**INTRADISTRICT ASSIGNMENT**

23. A substantial part of the events or omissions which give rise to the claims occurred in Contra Costa County, and therefore this action is properly assigned to the San Francisco Division. N.D. Cal. Local Rule 3-2(c)-(d).

**PARTIES**

24. Plaintiff Richard Marshall is a resident of Charlotte, North Carolina. Plaintiff worked for Defendant an authorization agent at its brick-and-mortar Charlotte, NC location from approximately March 2023 to June 2025 and remotely in the same position from approximately June 2025 until August 2025.

25. Defendant compensated Plaintiff for his services as an Agent in the form of an hourly wage, most recently at the rate of $24.60. Plaintiff Marshall signed a consent form to join this collective action lawsuit. ***Exhibit A***.

26. Additional putative Collective members were or are employed by Defendant as Agents in Alabama, Arizona, California, North Carolina, Michigan, and remotely in other states during the past three years and their consent to join forms will also be filed in this case.

27. According to its website, Defendant is an insurer that "serves real estate professionals and homeowners in numerous states across the country."[1]

28. Defendant is a stock corporation with its corporate headquarters located at 12657 Alcosta Boulevard, Suite 100, San Ramon, CA 94583.

29. Defendant's registered agent is CSC – Lawyers Incorporating Service, Attn: Koy Saechao, 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833.

30. Upon information and belief, Defendant employed hundreds of Agents – including Plaintiff – within the past three years and across the United States to provide customer support.

## GENERAL ALLEGATIONS

31. Throughout their employment with Defendant, Plaintiff and other Agents were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

32. Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

33. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

34. Defendant's Agent positions typically had schedules that required them to work at least eight (8) hours per day, on average five days each week, which equated to forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Agents worked less than forty (40) hours in a week and in other weeks they worked more than forty (40) hours. If Defendant's Agents strictly adhered to Defendant's baseline 40-hour schedule, the Agent schedule resulted in Agents working overtime on a weekly basis.

35. Throughout their employment with Defendant, Plaintiff and the other Agents' job duties included receiving inbound calls, making outgoing calls, and performing a wide range of services to provide customer support.

36. Once hired, Defendant provided all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning

[1] https://www.orhp.com/about (last visited March 3, 2025).

of the day, and how to log out for their meal periods; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Agents received was substantially, if not entirely, the same and all Agents were subject to the same disciplinary policies.

37. Plaintiff and other similarly situated Agents were instructed to be "phone ready" the moment their scheduled shift started. This required Defendant's Agents to be logged in and have loaded their essential work-related computer programs and applications at the start of their shift so they could be prepared to receive calls and/or begin making calls the moment their shift began. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, coaching, write ups, discipline, and possibly termination. Thus, Defendant forced its Agents to perform the boot-up and login process before clocking into Defendant's timekeeping system.

38. All of Defendant's Agents used the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work, and they could not perform their jobs without them.

39. To perform their job duties, Plaintiff and all other Agents were required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Agents were instructed to not actually "clock in" for their shifts until after the computer boot-up and login process was complete or nearly complete.

40. The pre-shift off-the-clock time Plaintiff and all other Agents spent booting up and logging in, and the mid-shift time logging back in to their computers, directly benefited Defendant and was integral and indispensable to the Agents' job responsibilities.

41. Despite knowing Plaintiff and all other Agents performed this pre- and mid-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along

with the time they logged into their telephone systems.

43. Because Defendant required its Agents to perform work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spent working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

44. Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

45. Defendant maintained detailed attendance, schedule adherence, and quality assurance policies and procedures and used them to evaluate the Agents' job performance.

46. Defendant used its attendance/schedule adherence policies to require its Agents to arrive early and work off-the-clock so they could be "phone ready" at the start of their shifts.

47. Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

48. Upon arriving at their computer, Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

49. The pre-shift boot-up and login process generally consisted of the following steps:

a. Turning on or waking up their computer and logging into Windows;

b. Opening a VPN application and logging in using a username and password, then completing a two-factor authentication process;

c. Opening and logging into Defendant's communications and phone system, Genesys;

d. Opening their email and internet browser;

e. Once all applications to be "phone ready" were opened, opening their timekeeping application, ADP, and clocking in for their shift.

50. The boot-up and login process described above took at least five (5) to six (6) minutes per shift on a daily basis, or more, depending on how fast/slow the computers and programs were operating.

51. The boot-up and login process was the same for all Agents whether they worked at Defendant's brick-and-mortar call centers or remotely.

52. Agents were required to complete each of these tasks prior to "clocking in," as Agents could not be "phone ready" until these tasks were complete.

53. If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records.

54. Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

55. Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

56. Defendant's Agents were not compensated for any of this time because Defendant prohibited Agents from clocking into their timekeeping software before the start of their scheduled shift.

57. The pre-shift off-the-clock work performed by Agents directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Agents.

**B. <u>Mid-Shift Off-the-Clock Work</u>**

58. Defendant provided its Agents one unpaid 30-minute meal period each eight (8) hour shift.

> Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. §785.19(a).

59. Instead of complying with the law, Defendant did not provide Agents with legitimate bona fide meal periods because it required its Agents to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking/making calls the moment their meal period concluded.

60. Agents spent approximately five (5) minutes per shift performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay Agents for work performed during their meal periods.

**C. <u>Defendant Benefited From the Uncompensated Off-the-Clock Work</u>**

61. At all relevant times, Defendant has required and directly benefited from the off-the-clock work described above and performed by Plaintiff and all other Agents.

62. At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

63. At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents spent in connection with off-the-clock work activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

64. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Agents in order to pressure them into performing off-the-clock work.

65. Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

66. At all relevant times, Defendant's policies and practices deprived Plaintiff and the Agents of wages owed for off-the-clock activities they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

67. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Agents worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

68. Defendant knew or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

69. Despite knowing Agents performed off-the-clock work before their shifts, and during their unpaid meal periods Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

70. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff and the Agents at the FLSA mandated overtime premium of one and one-half their regular hourly rate where they worked in excess of forty (40) hours in a workweek.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

71. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> ***All current and former hourly authentication agents, customer service agents, or similar positions, who work or have worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

72. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

73. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

74. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid the full premium overtime compensation they were due when they worked beyond forty (40) hours in a workweek and were not paid any overtime in workweeks where their time cards reflected that they worked slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually worked in excess of forty (40) hours, for which they were due both overtime gap time and overtime.

75. Defendant assigned and/or was aware of all the work that Plaintiff and the members of the FLSA Collective performed.

76. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

77. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under forty (40) associated with unpaid overtime;

c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work.

78. Defendant was aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

79. Defendant's unlawful conduct as and continues to be widespread, repeated, and consistent.

80. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they were or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

81. The employment relationship between Defendant and every proposed FLSA Collective member is the same and differ only by name, work location, and rate of pay. The key issue – the amount of uncompensated off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

82. There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this

lawsuit and the opportunity to join.

83. Plaintiff estimates the FLSA Collective, including both current and former Agents over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

84. All of the estimations discussed herein will be refined after collective discovery is completed.

**RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS**

85. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> ***All current and former hourly authentication agents, customer service agents, or similar positions, who work or worked for Defendant in North Carolina at any time during the applicable statutory period.***

("Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

86. The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are dozens, if not hundreds, of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

87. There is a well-defined community of interests among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre- and mid-shift time Rule 23 North Carolina Class members spent on startup and login activities each shift is compensable;

b. When the Rule 23 North Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member regular wages or minimum wages for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member overtime wages for each overtime hour

worked; and

e. The proper measure of damages sustained by the Rule 23 North Carolina Class.

88. Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that he and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

89. Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

90. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 North Carolina Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens, or hundreds, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 North Carolina Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

91. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

92. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

93. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

94. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> ***All current and former hourly authentication agents, customer service agents, or similar positions, who work or worked for Defendant at any time during the applicable statutory period.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

95. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

96. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

97. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the

Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

98. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

99. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 North Carolina Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens, or hundreds, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 North Carolina Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

100. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

101. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

102. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

103. Plaintiff re-alleges and incorporates all previous paragraphs herein.

104. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

105. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

106. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

107. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees and classified as such.

108. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

109. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

110. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform at least five (5) to six (6) minutes or more of pre-shift computer boot-up and login time, and at least five (5) mid-shift login time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

111. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

112. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

113. In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

114. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Agents spent working off-the-clock, and Defendant could have properly compensated Plaintiff and the proposed Collective members for this work, but did not.

**115.** The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II
## (On Behalf of the Rule 23 North Carolina Class)
## VIOLATION OF THE NORTH CAROLINA WAGE ACT
## N.C. GEN. STAT. 95-25.1, *et seq.*

116. Plaintiff realleges and incorporates all previous paragraphs herein.

117. At all times relevant to this action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 North Carolina Class members were or are employees entitled to the Act's protections.

118. The North Carolina Wage Act mandates that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

119. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages on their regular paydays.

120. In particular, Defendant, in violation of N.C.G.S. § 95-25.6, failed to pay all straight time wages for unpaid work during pay periods without overtime, also known as "gap time," owed to Plaintiff and the North Carolina Class.

121. Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class members for the time spent on the work activities described in this Complaint.

122. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff and the North Carolina Class members have been deprived of compensation due and owing.

123. Defendant's failure to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S. §§ 95-25.22 (a1).

124. As a result of Defendant's unlawful acts, Plaintiff and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S. §§ 95-25.6, 95-25.22(a), (a1), and (d).

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

125. Plaintiff re-alleges and incorporates all previous paragraphs herein.

126. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

127. For example, Defendant offered to compensate Plaintiff at a minimum of $24.60 per hour if he agreed to perform services for Defendant as an Agent. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling his duties as an Agent.

128. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with the work activities described herein.

129. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

130. Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure “gap time” claim).

131. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

132. As a direct and proximate result of Defendant’s contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT IV**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

133. Plaintiff re-alleges and incorporates all previous paragraphs herein.

134. The Count is pled in the alternative to Count III *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

135. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

136. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant’s promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

137. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

138. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

139. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

140. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

141. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

142. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Marshall, on behalf of himself and on behalf of the putative FLSA Collective, requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, emails, and telephone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's North Carolina state law claims (Count II);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts III and IV);

e. An Order designating Plaintiff Richard Marshall as the Representative of the FLSA Collective action, Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as Collective/Class counsel for the same;

f. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant violated North Carolina wage-and-hour cited herein;

i. An Order declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

j. An Order declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

k. An Order granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

l. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

m. An Order awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Date: April 1, 2026

Respectfully submitted,

/s/ Kevin J. Stoops
Kevin J. Stoops
SOMMERS SCHWARTZ, P.C.
1801 Century Park East, Suite 860
Los Angeles, CA 90067
(248) 355-0300
kstoops@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective and Class*